Drew Timothy MORSE, Petitioner–Appellee,

v.

David TRIPPETT, Respondent–Appellant.

No. 00–1868.

United States Court of Appeals, Sixth Circuit.

Feb. 20, 2002.

Before KEITH, KENNEDY, and BATCHELDER, Circuit Judges.

KENNEDY, Circuit Judge.

Respondent appeals from the district court's order granting petitioner habeas corpus relief. For the reasons set forth below, we vacate the district court's order and remand for further proceedings consistent with this opinion.

## I.

Pursuant to a plea agreement, petitioner Morse pleaded guilty in the Genesee County Michigan Circuit Court to one count of Possession with Intent to Deliver over 50 grams of Cocaine, in violation of M.C.L. 333.7401(2)(a)(iii). In exchange, the prosecution *nolle prossed* a supplemental information charging petitioner as a habitual offender, fourth, pursuant to M.C.L. 769.12. At the time of the plea hearing, Morse was represented by attorney David A. Nelson. At the hearing, the presiding judge conducted a proper plea colloquy. Following the entry of his plea, but before sentencing, Morse, now represented by retained counsel Harry S. Sherwin, filed a motion to withdraw the plea. Morse argued that he was confused at the plea hearing, and asserted that he thought he was pleading guilty to possession of *less* than 50 grams of cocaine. The trial court conducted an evidentiary hearing on the matter and denied the motion, concluding that the plea had been knowingly and vol-

untarily entered. Morse was then sentenced to ten to twenty years imprisonment.

On direct appeal, Morse was represented by Lawrence R. Greene. Morse, through Attorney Greene, appealed his conviction to the Michigan Court of Appeals, presenting only the issue of whether the trial court violated the standard set forth in *People v. Coles*, 417 Mich. 523, 339 N.W.2d 440 (1983) for individualized sentencing. At the time, *Coles* was no longer good law. Morse, again through Attorney Greene, subsequently filed a motion for leave to file a supplemental brief. Morse sought to submit a sentencing proportionality argument based on the standard enunciated in *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), which replaced the *Coles* standard. The Michigan Court of Appeals denied Morse's motion for leave to file the supplemental brief. Morse then filed with the Michigan Court of Appeals a motion to remand to the trial court to conduct an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973). Morse argued that he received ineffective assistance of counsel, because his trial attorney, Nelson, induced him to plead guilty by promising that he would receive probation or a term of one to five years imprisonment. The Court of Appeals denied the motion, without prejudice to Morse's right to raise the issues on an appropriate motion in the trial court. Attorney Greene subsequently filed a Motion to be Relieved as Counsel, which was granted on October 21, 1991. At that time, the appellate briefs had been filed, the case was submitted on briefs, and the parties were awaiting a ruling.

On November 1, 1991, the Michigan Court of Appeals affirmed Morse's conviction and sentence. Morse, proceeding *pro se*, later filed a delayed application for leave to appeal in the Michigan Supreme Court, which was denied as untimely on April 6, 1994.

Morse also filed, *pro se*, several post-conviction collateral motions. On January 21, 1992. Morse filed a motion for relief from judgment and a motion for a *Ginther* hearing with the trial court. Morse argued: 1) that his plea was coerced by the filing of a charge of habitual offender, fourth, when in actuality he had only two prior felony convictions, 2) that he was denied the effective assistance of counsel at the plea hearing, and 3) that his sentence was disproportionate and based upon inaccurate information. The trial court denied the motion. The court concluded that Morse was not entitled to a *Ginther* hearing because the court had already held an evidentiary hearing on the issue of the voluntariness of his plea and concluded that it was voluntarily and knowingly entered. (J.A. at 72.) Morse had shown no reason why that result should be changed, making only a bare allegation of ineffective assistance of counsel. The court further rejected Morse's argument that his counsel should have raised the alleged inaccuracies of the Pre–Sentence Report, which showed three prior felony convictions. Finally, the court rejected Morse's arguments concerning the proportionality of his sentence under *Milbourn*.

Next, Morse filed a Request for Appointment of New Appellate Counsel or Counsel to File for Post Conviction Relief in the trial court. Morse argued that he was denied effective assistance of counsel because his appellate counsel, Greene, had been admonished by the Attorney Grievance Commission for failing to research the case law governing his claim of disproportionate sentence. The trial court denied this motion, holding that the admonishment was insufficient to establish that Morse received ineffective assistance of

counsel. Morse also filed a motion to disqualify Judge Ransom, the trial court judge. In that motion, Morse argued that the trial court judge knew that Morse's trial attorney appeared in court intoxicated, and that the court failed to protect Morse's interests by not taking certain actions. The trial judge denied Morse's motion to disqualify. The motion was then referred to the chief judge of the circuit court, who affirmed the trial judge's order denying disqualification. Significantly, there is nothing in the record to suggest that these orders were ever appealed to the Michigan Court of Appeals, or that the issue of counsel's intoxication was ever again raised in any of the Michigan state courts.

On February 8, 1993, Morse filed a second motion for relief from judgment, presenting the following claims: 1) a promise-induced guilty plea, 2) his sentence violated *Milbourn*, 3) his guilty plea was not entered knowingly and voluntarily, 4) the court abused its discretion in denying his motion to withdraw the plea, 5) constitutional deprivation of effective assistance of trial counsel Nelson and Sherwin, and appellate counsel Greene, 6) cause and prejudice under *Strickland v. Washington* and M.C.R. 6.508(D)(3)(a), and 7) Morse was entitled to a hearing on ineffective assistance of counsel claims and cause and prejudice tests. On March 29, 1994, the trial court denied Morse's second motion for relief from judgment. No appeal was taken.

On April 25, 1995, Morse filed a third motion for relief from judgment, arguing that his Constitutional rights were violated by "punishment of forfeiture and conviction and sentence for single offense and incident." (J.A. at 177.) Following oral argument, the trial court denied this motion. The court also denied Morse's subsequent motion to reconsider, in an order dated November 8, 1995.

On March 7, 1996, Morse filed in the Michigan Court of Appeals a delayed application for leave to appeal the trial court's November 8, 1995 order. Morse presented the following claims:

I. [Petitioner] is entitled to have his conviction and sentence dismissed and vacated because the[y] were obtained in violation of his constitutional protection against double jeopardy as guaranteed by USCA Amend. 5 and 14, where he was punished first in a forfeiture proceeding and then again by being convicted and sentenced for the same conduct in a criminal proceeding.

II. [Petitioner] was denied his Sixth Amendment right to effective counsel when he was induced to plead guilty to an illusionary [sic] plea agreement wherein he was threatened with being tried as a habitual offender fourth offense which carried a maximum of life imprisonment where in fact [Petitioner] had only two prior convictions, thus rendering his plea both unintelligent and illusionary [sic], as a direct result of the inaccurate advice of counsel.

III. [Petitioner] was denied Sixth Amendment right to effective assistance of counsel when trial counsel failed to seek suppression of evidence obtained during pretextual traffic stop in violation of USCA Amend. 4 and 6 and due process of law USCA Amend. 14.

IV. [Petitioner] was denied effective assistance of counsel at sentencing and on appeal, where counsels failed to fully present to the trial and appeal court the factors for fair determination of his motion to withdraw his guilty plea because of illusionary [sic] and improper advice along with inadequate investigation that rendered appellate counsel ineffective as to the cumulative effect of double jeop-

ardy violation, failure to seek suppression and illusionary [sic] plea bargain, thus entitling [Petitioner] to reversal of his conviction and remand for an evidentiary hearing and his conviction vacated or a new trial ordered.

At the same time, Morse filed in the Court of Appeals a motion for remand for evidentiary hearing regarding his ineffective assistance of counsel claim. On September 11, 1996, the Michigan Court of Appeals denied his delayed application for leave to appeal and his motion for remand. Morse filed a motion for rehearing, which was also denied.

On January 6, 1997, Morse filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the issues raised to the Court of Appeals and one additional claim:

> I. [Petitioner] was denied Sixth Amendment right to effective assistance of counsel, and fair review on this motion for relief from judgment, when the trial court failed to properly decide his motion and make a determination as to the acts and conduct of counsel at trial and on appeal, where both counsels were both deficient and prejudicial, allowing a miscarriage of justice to occur.

The Michigan Supreme Court denied Morse's delayed application for leave to appeal on November 7, 1997. The court's order read, in its entirety:

> On order of the Court, the delayed application for leave to appeal is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).

(J.A. at 171.)

On June 9, 1998, Morse filed a request for a new trial or an evidentiary hearing with the trial court, arguing: 1) prosecutorial misconduct due to the prosecutor's misrepresentation to the court that Morse had three prior felony convictions, 2) his plea bargain was illusory, and 3) that one of Morse's three prior convictions upon which the supplemental information was based was, in fact, a misdemeanor. The trial court denied Morse's motion as an improper successive motion for relief from judgment.

Finally, Morse filed in the United States District Court this petition for habeas corpus relief, raising five claims for relief. Morse pursued his habeas case even after he had been released on parole. The district court granted Morse an evidentiary hearing. At the outset of the hearing, Morse indicated that he wished to pursue his habeas claims even though he was aware that if the district judge granted relief he could be prosecuted again for the original charges and perhaps given a greater sentence. (J.A. at 283–84). The district court ultimately granted Morse's petition for a writ of habeas corpus. The court concluded that Morse was denied the effective assistance of counsel at the plea hearing because Morse was confused about what he was pleading guilty to, as a result of Attorney Nelson's alcohol abuse and mental illness problems. The court also noted that Morse had used cocaine prior to the plea hearing, adding to his confusion. The court further held that Morse was denied the effective assistance of appellate counsel, noting that 1) Attorney Greene filed an appellate brief raising only one issue, and relying on *Coles,* a case that was no longer good law, 2) Attorney Greene waited an inexcusable six months to file a motion for leave to file a supplemental brief based on *Milbourn,* 3) Attorney Greene failed to raise the meritorious issue of ineffective assistance of trial counsel, 4) Attorney Greene filed only one other motion on Morse's behalf—a "skeletal" motion to remand that was inadequately supported, 5) Attorney Greene failed to file a

motion for a *Ginther* hearing with the trial court. Finally, the district court ruled that Morse suffered the actual absence of counsel from the time that Greene was relieved as counsel until the time that the Michigan Court of Appeals issued its opinion affirming Morse's conviction. The district court ordered that a new trial be scheduled within ninety days, or that Morse be unconditionally released. Respondent appeals.

## II.

■ We review *de novo* the district court's decision to grant or deny a writ of habeas corpus. *See, e.g., Northrop v. Trippett*, 265 F.3d 372, 376 (6th Cir.2001). Based on the record before the court, we conclude: 1) that Morse failed to exhaust his state court remedies with respect to the ineffective assistance of trial counsel claim, 2) that Morse's ineffective assistance of trial counsel claim would be dismissed as procedurally barred if he were to assert it in a new motion for relief from judgment in the Michigan courts, and 3) that Morse's ineffective assistance of appellate counsel claims are procedurally defaulted. We therefore vacate the district court's grant of the writ and remand to the district court for further proceedings.

### A. Trial Counsel

Morse filed his petition for writ of habeas corpus on August 19, 1998. Thus, the 1996 amendments to 28 U.S.C. § 2254, embodied in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), are applicable to Morse's petition. That statute provides, in relevant part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). The Supreme Court, interpreting this provision, has held that exhaustion of state remedies requires that petitioners give state courts a "full and fair opportunity" to resolve any federal constitutional questions before the federal court grants relief based on a federal constitutional violation. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). A "full and fair opportunity," the Court held, requires that petitioners "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.*

■ Although Respondent has not argued before this court that Morse failed to exhaust his state court remedies, this court may raise the issue. The AEDPA added the following provision to § 2254:

A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

28 U.S.C. § 2254(b)(3). Even before the AEDPA amendments became effective, however, the Supreme Court held that courts of appeals may "take a fresh look" at the issue of exhaustion where the state failed to raise it as a defense before the district court, and where the interests of comity and federalism would be served by the dismissal of unexhausted claims. *See Granberry v. Greer*, 481 U.S. 129, 134, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). There

is no suggestion in the record before the court that the State, through counsel, at any time expressly waived the exhaustion requirement. Indeed, the State raised the issue before the district court. We therefore consider whether Morse has exhausted his state court remedies.

As noted above, exhaustion requires that Petitioner provide the state courts with the opportunity to correct any constitutional violations by invoking "one full round" of the state's appellate review process. *O'Sullivan*, 526 U.S. at 845. Here, Morse did present an ineffective assistance of trial counsel claim to both the Michigan Court of Appeals and the Michigan Supreme Court. But the *nature* of that claim was dramatically different from the nature of the claim he presented to the district court, and which the district court ultimately found persuasive. In *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), the Court considered a case in which the petitioner presented new evidence to the federal district court that had not been offered in the state court proceedings. The petitioner argued that his conviction denied him equal protection, because he was indicted by a grand jury from which members of his race were systematically excluded. In the district court, petitioner submitted several "new" affidavits to support his claim that no black individual had ever served on a grand jury in the county in question. But that had been considered an undisputed fact in the state courts. The petitioner had also submitted to the district court, but not the state courts, a computer analysis (in response to the district court's request) that showed the probability that chance could have accounted for the exclusion of blacks on grand juries in the county. The Court concluded that the new evidence did not "fundamentally alter the legal claim" that had been presented to the state courts. *Id.* at 260. The new affidavits did not

introduce a new claim upon which the state courts had not passed. Nor did the "sophisticated computer techniques" render the claim a "wholly different animal." *Id.* at 259.

Under different circumstances, courts have found that new evidence presented to the federal district court altered the nature of the habeas claims presented to the district court. In *Demarest v. Price*, 130 F.3d 922, 936 (10th Cir.1997), the petitioner had unsuccessfully presented a claim of ineffective assistance of counsel in the state courts. There, the petitioner had produced testimony from his trial counsel admitting that he failed to properly investigate the case and failed to interview potential witnesses. After he filed for habeas relief in federal district court, a federal magistrate held an evidentiary hearing. In that hearing the petitioner produced new exculpatory testimony of two witnesses that should have been interviewed by his trial counsel. The Tenth Circuit held that this new testimony significantly changed the nature of petitioner's allegations, because the state courts could not adequately assess the prejudicial effect of counsel's failure to interview these witnesses without hearing their proffered testimony. *See id.* at 936. The court reached a similar conclusion with respect to two other categories of newly-offered evidence. Thus, the Tenth Circuit vacated the district court's decision to grant the writ, concluding that the petitioner had not exhausted his state court remedies. Similar results were reached in *Jones v. Hess*, 681 F.2d 688 (10th Cir.1982). *Wise v. Warden, Maryland Penitentiary*, 839 F.2d 1030 (4th Cir.1988), and *Dispensa v. Lynaugh*, 826 F.2d 375 (5th Cir.1987).

In the present case, the nature of Morse's ineffective assistance claim in the federal court was dramatically different,

and considerably stronger, than the claims of ineffective assistance he presented to the Michigan Court of Appeals and the Michigan Supreme Court. In the federal evidentiary hearing Morse produced evidence that nearly three years after the plea hearing, and over one year after Morse's conviction was affirmed on appeal, attorney Nelson admitted he was suffering from alcoholism and severe mental illness while he was representing Morse. Morse showed that Nelson pleaded *nolo contendere* to allegations of professional misconduct before the Michigan Attorney Grievance Commission. In 1993, the Grievance Commission issued, with Nelson's consent, an order revoking his license to practice law. In a subsequent Petition for Review, Nelson admitted to the Grievance Commission that he "drank alcohol morning, noon, and night," and was diagnosed as a paranoid psychotic schizophrenic psychopath and an acute alcoholic. The district court found that this evidence, combined with Morse's testimony in the federal hearing that he had used cocaine prior to the plea hearing, made it "understandable" that Morse would be "confused" at the plea hearing.

Regardless of whether the district court's conclusion on the merits was cor-rect, its decision to grant the writ, relying on the evidence presented at the federal hearing, undermines the interests of comity and federalism. The Michigan state courts were never given a "full and fair" opportunity to address Morse's ineffective assistance of counsel claim as it was presented to the federal district court. Morse's claims of ineffective assistance in the state appellate courts focused on the illusory nature of the plea bargain. Morse argued that the prosecution improperly threatened him with a charge of habitual offender, fourth, when he had only two prior felony convictions. Morse had also argued on direct appeal that his plea was induced by Nelson's promise that he would receive only one to five years imprisonment. In post-conviction appellate proceedings, Morse had also made a vague argument that his plea was not knowingly and voluntarily entered, and that his counsel was ineffective for failure to investigate and for failure to raise a specific evidentiary issue. After carefully searching the record before us, however, we find no indication that Morse ever fairly presented any claim to the Michigan Court of Appeals or to the Michigan Supreme Court that attorney Nelson was suffering from alcoholism or mental illness.[1] Nor do we

1. There are surprisingly few places in the record even mentioning Nelson's alcohol problem or mental illness, other than in the federal proceedings. First are the orders denying Morse's motion to disqualify. (J.A. 80, 85.) These orders reveal that Morse had argued that Nelson appeared in court intoxicated. Initially, we note that this argument was not presented to the state courts in the form of a federal constitutional claim. More importantly, this argument was never advanced beyond the trial judge and the chief circuit judge. Neither the Michigan Court of Appeals nor the Michigan Supreme Court were presented with an opportunity to consider evidence of Nelson's alcoholism or mental illness. Second is Morse's Brief in Support of Delayed Application for Leave to Appeal to the Michigan Supreme Court. (J.A. at 34.) There, Morse refers to the Attorney Grievance Commission proceedings and notes that Nelson admitted to insanity and alcohol addiction during those proceedings. However, this argument was advanced in the context of a claim that Nelson was ineffective for failure to seek suppression of certain evidence obtained during an allegedly pretextual traffic stop. This does not amount to a full and fair presentation of the claim the district court found persuasive—that Nelson's alcoholism and mental problems led to Morse's confusion at the plea hearing. Third, and finally, are a few references to Nelson's alcoholism and mental problems in some of Morse's state post-conviction briefs filed in 1993. These briefs were not submitted in the original joint appendix filed by the parties, but were filed as

find any indication that Morse presented to the state appellate courts the claim that he was under the influence of cocaine at the time the plea was entered, a fact that the district court found important. Clearly, evidence of Nelson's problems and Morse's use of cocaine prior to the plea hearing changed the nature of the ineffective assistance of trial counsel claim. Unlike the new evidence in *Vasquez*, the new evidence presented to the district court here rendered Morse's claim a "wholly different animal." This is not a case where Morse simply offered additional bits of evidence to support his state claim in the district court. Rather, the entire factual basis of his ineffective assistance claim has shifted from the illusoriness of his plea to Nelson's alcoholism and mental illness. The connection between the two is tenuous, at best, and the state courts should have been given a chance to rule on the claim in light of the new evidence.

■■■ Normally, when a petitioner has not exhausted his state remedies, the appropriate action is to dismiss the petition without prejudice, so that the petitioner may present his claims to the state courts. *See Demarest*, 130 F.3d at 939. However, we should first consider whether petitioner would be able to raise his claims in state court. If the Michigan courts would find his claim procedurally barred, then there is a procedural default for purposes of federal habeas review. *See id.* Hence, we now consider whether Michigan courts would permit Morse to raise his ineffective

assistance of trial counsel claim in a new motion for relief for judgment.

Prior to 1995, Michigan did not limit the number of motions for relief for judgment that a convicted defendant could file. In 1995. Michigan amended the Michigan Court Rules, adding Rule 6.502(G), which reads:

(G) Successive Motions.

(1) Except as provided in subrule (G)(2), regardless of whether a defendant has previously filed a motion for relief from judgment, after August 1, 1995, one and only one motion for relief from judgment may be filed with regard to a conviction. The court shall return without filing any successive motions for relief from judgment. A defendant may not appeal the denial or rejection of a successive motion.

(2) A defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion. The clerk shall refer a successive motion that asserts that one of these exceptions is applicable to the judge to whom the case is assigned for a determination whether the motion is within one of the exceptions.

Mich. Ct. Rule 6.502(G).

In this case, Morse has filed three previous motions for relief from judgment in the Michigan courts, as well as a motion for new trial. The Michigan circuit court interpreted the motion for new trial, filed

---

attachments to Morse's Motion to Expand the Record on Appeal. (Exp. Record at 1, 58). The briefs are also insufficient to show exhaustion. Morse's motions were filed with the state trial court and the orders denying them were not properly appealed to the Michigan appellate courts. Although Morse purported to appeal these orders in a delayed application for leave to appeal to the Michi-

gan Court of Appeals, that application was filed approximately three years later. Moreover, the issues presented for review in the delayed application did not mention Nelson's alcoholism or mental illnesses. Under these circumstances, we cannot conclude that Morse gave the Michigan appellate courts a full and fair opportunity to resolve the claim he now presents to the federal courts.

in 1998, as an improper successive motion for relief from judgment, and dismissed it. If Morse were to now file a motion for relief from judgment based on the evidence he presented to the federal district court, it would undoubtedly be rejected by the Michigan court as an improper successive motion under Rule 6.502(G)(1), unless it met an exception under subrule (G)(2).[2] Subrule (G)(2) permits the filing of a successive motion only where there has been a retroactive change in the law or a claim of newly discovered evidence. Here, it appears from the record that neither of these exceptions would apply. There has been no retroactive change in the Sixth Amendment law of ineffective assistance of counsel that would benefit Morse here, and he has not claimed otherwise. Nor is there newly discovered evidence to support his claims. Although Morse never presented evidence of attorney Nelson's alcoholism or mental illness to the Michigan courts in a motion for relief from judgment or in his motion for a new trial, that evidence has been available to him since at least 1993. Shortly after his conviction, Morse filed a grievance against Nelson. Morse also filed a motion to disqualify the trial judge, arguing, *inter alia,* that the judge permitted Nelson to appear in court drunk. The Attorney Grievance Commission issued an Order of Revocation of Nelson's right to practice law on June 4, 1993. In a Petition for Review filed by Nelson on June 17, 1993, Nelson admitted that he suffered from alcoholism and mental illness. Morse could have presented this evidence to the Michigan courts in his subsequent motions for relief from judgment or in his motion for a new trial. Similarly, Morse's testimony that he had used cocaine prior to the plea hearing was certainly available to him for use in any of his post-conviction motions. This court concludes, therefore, that Michigan courts would apply Rule 6.502(G) to procedurally bar Morse's ineffective assistance of trial counsel claim. That claim is, therefore, procedurally defaulted for purposes of federal habeas review.

■ The federal district court may consider procedurally defaulted claims only if the petitioner demonstrates either 1) cause for the default and actual prejudice resulting from a violation of federal law, or 2) a fundamental miscarriage of justice if the merits of the federal claim are not considered. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The parties have not argued cause and prejudice or fundamental miscarriage of justice on appeal. On the record before us, we decline to reach these determinations. On remand, the district court should proceed to determine whether, under federal law, Morse has demonstrated either cause and prejudice or a fundamental miscarriage of justice. In making this inquiry, the district court may consider the possibility that ineffective assistance of appellate counsel was the cause for Morse's failure to raise his ineffective assistance of trial counsel claims. The court, however, should be mindful that an ineffective assistance of appellate counsel claim can serve as the cause to excuse Morse's procedural default on another claim only if Morse can satisfy the cause and prejudice standard with respect to the ineffective assistance of appellate counsel claim itself. *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

■ If the district court concludes that Morse has demonstrated cause and prejudice for his procedural defaults, then the

---

2. The Michigan courts have interpreted Rule 5.602(G) to permit a petitioner to file one motion for relief from judgment after August 1, 1995, the effective date of the statute, even though he may have filed several such motions prior to that date. *People v. Ambrose,* 459 Mich. 884, 587 N.W.2d 282 (Mich.1998).

court should proceed to consider the merits of Morse's claim. The court is reminded, however, that in doing so it is required to give deference to the factual findings of the state trial court. The AEDPA provides: "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Although the district court properly set forth this standard in its opinion granting habeas relief, the standard was not followed. The district court held an evidentiary hearing and heard testimony concerning the plea hearing and the events leading up to the plea hearing, including testimony concerning Nelson's advice to Morse before the plea hearing. Based in part on the testimony presented at this hearing, the district court concluded that Morse was confused at the plea hearing, and that Nelson's alcoholism and mental illness contributed to that confusion. Yet the district court did not state its reasons for conducting such a hearing or for discounting certain factual findings made by the state court. After a hearing on the merits, the state trial judge found that Morse's plea was knowingly and voluntarily entered. Later, in response to a motion to disqualify the state trial judge, the trial judge found that Nelson did not represent Morse in court while intoxicated. (J.A. at 78.) This finding was affirmed by the chief judge of the circuit. (J.A. at 84.) Before the district court may disregard

these state court factual findings, it must find that Morse rebutted the presumption of correctness with clear and convincing evidence. Because it failed to do so, the court's findings with respect to the incompetence of trial counsel are set aside.

### B. Appellate Counsel

The district court also found that Morse received ineffective assistance of appellate counsel, because attorney Greene: 1) failed to raise the meritorious ineffective assistance of trial counsel claim, 2) raised only one issue on direct appeal, relying on a case that was no longer good law, and 3) failed to file a motion for a *Ginther* hearing in the trial court. Further, the district court found that Morse suffered the actual absence of counsel on appeal because he was without appellate counsel from the date Greene's motion to withdraw was granted to the date the Michigan Court of Appeals entered an order affirming Morse's conviction.

■■■ Morse's claims of ineffective assistance of appellate counsel and actual absence of appellate counsel arguably do not face the same exhaustion problem as his ineffective assistance of trial counsel claim. Several of the deficiencies in Greene's representation of Morse that the district court relied on in granting the writ were presented to the Michigan courts.[3] Nonetheless, we conclude that these claims are also procedurally defaulted.[4]

■■■ As discussed above, in cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, a federal court will not review the

---

3. We note, however, that the district court found that Greene's ineffectiveness on appeal was prejudicial to Morse because the court had already concluded that Nelson was ineffective at trial (based on the new evidence). (J.A. at 204–05). Although Morse's claim of ineffectiveness of appellate counsel had been

presented to the Michigan courts, Greene's decision to not raise an ineffective assistance of trial counsel claim on appeal looks dramatically different in light of the new evidence produced in the federal hearing.

4. As with the exhaustion issue, this court is free to raise the issue of procedural default

claims unless the prisoner can show either 1) cause for the default and actual prejudice resulting from the violation of federal law, or 2) that the refusal to consider the claims would result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750. A procedural default occurs where the last state court from which the petitioner sought review invoked the state procedural rule as a basis for its decision to deny review of the petitioner's federal claim. *Id.* at 729–30. In this case, the district court found that the last reasoned opinion addressing petitioner's claims was the trial court's Order Denying Relief from Judgment dated March 29, 1994. (J.A. 187.) The district court reasoned that subsequent opinions of the Michigan Court of Appeals and the Michigan Supreme Court summarily denying relief "for failure to establish grounds for relief from judgment pursuant to M.C.R. 6.508(D)" were not "reasoned state court judgment[s] sufficient to establish procedural default." (J.A. at 186.)[5] But the Sixth Circuit has recently held otherwise. In *Simpson v. Jones,* a panel of this court held that a Michigan Supreme Court order denying an application for leave to appeal and stating simply that petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)" was sufficient to constitute a procedural bar, despite its brevity. 238 F.3d 399, 407–08 (6th Cir. 2000). Hence, the district court's determination that Morse's ineffective assistance claims were not procedurally defaulted was error.

For the reasons discussed above, the district court, on remand, should consider whether Morse can demonstrate cause for his default and actual prejudice, or that refusal to hear his claim would amount to a fundamental miscarriage of justice.

## III.

For the foregoing reasons, the order of the district court is hereby vacated, and this case is remanded to the district court for proceedings consistent with this opinion.

*sua sponte. See Elzy v. United States,* 205 F.3d 882, 886–87 (6th Cir.2000).

**5.** Michigan Court Rule 6.508(D) is a procedural rule which precludes a Michigan court from granting relief from judgment in certain cases. One subsection of Rule 6.508(D) precludes relief where the defendant's asserted grounds for relief, other than jurisdictional defects, could have been raised on appeal or a prior post-conviction motion, unless certain exceptions are met. Mich. Ct. Rule 6.508(D)(3)